LOUISVILLE AND NASHVILLE RAILROAD COMPANY ET AL. *v.* THE WESTERN UNION TELEGRAPH COMPANY OF INDIANA.

[No. 22,652.   Filed March 9, 1916.]

1.   APPEAL.—*Review.*—*Weight of Evidence.*—Where the evidence on the issue whether the use of a railroad right of way for a telegraph line would materially and substantially interfere with the use for railway purposes, to which it was already devoted, was conflicting and susceptible of different inferences as to the ultimate facts to be determined therefrom, it was exclusively the province of the court or jury trying the cause to weigh the evidence and draw the inferences therefrom, and the decision thus made can not be disturbed on appeal.   p. 533.

2.   EMINENT DOMAIN.—*Complaint.*—*Sufficiency.*—Allegations of a complaint to appropriate a right of way for a telegraph line over and along the right of way of a railroad company, stating that the appropriation was sought by plaintiff subject to unaccepted promissory conditions by plaintiff to move and change its poles and parts of its line and relocate same on such right of way whenever the operation and maintenance of such line should be an interference to any change in the location of the railroad track or the construction of new tracks, etc., served to show that plaintiff did not seek to condemn the land described at all events and to pay the compensation awarded, but that its purpose was to make the appropriation only upon the conditions stated, and in case it was permitted to impose the stipulations as to the future, and to have such stipulations

considered in making the award, rendered the complaint bad, since such terms and conditions as therein set forth can not be imposed by the party seeking to condemn real estate. p. 535.

3. EMINENT DOMAIN.—*Conditional Appropriation.—Complaint.*—A complaint for appropriation of land may be so drawn as to limit the rights to be acquired thereunder and so as to leave in the landowner certain easements and rights not taken by appropriation, in which event the damages are assessed on the basis of the land appropriated as considered in connection with the rights and easements not taken and compensation is awarded accordingly; but in the absence of an agreement, the party condemning must take the rights which he seeks to appropriate absolutely and unconditionally and he must make full compensation for what he takes. p. 536.

From Posey Circuit Court; *Herdis F. Clements,* Judge.

Action by The Western Union Telegraph Company of Indiana against the Louisville and Nashville Railroad Company and another. From a judgment for plaintiff, the defendants appeal. *Reversed.*

*Philip W. Frey,* for appellants.

*Pickens, Moores, Davidson & Pickens, George H. Fearons* and *J. E. Williamson,* for appellee.

LAIRY, J.—This action was brought by appellee to condemn a right of way for a line of poles and wires longitudinally upon and along the railroad right of way of appellants. The right of way affected by this proceeding lies within the county of Posey and extends from the State line on the west to the east line of Posey County. The questions presented on this appeal are practically the same as those presented in an appealed case between the same parties recently decided by this court, but in this case all of the objections filed were overruled by the trial court and appraisers appointed to assess the damages, while in the other case the court sustained certain of the objections and declined to appoint appraisers. *Western Union Tel. Co.* v. *Louisville, etc., R. Co.* (1915), 183 Ind. 259, 108 N. E. 951. The plead-

ings in this case, as in the one just cited, presented an issue of fact. On the part of the railroad company it was asserted that the use for which the 1. condemnation was sought would materially and substantially interfere with the use of the right of way for railway purposes to which it was already devoted, and this was denied by the telegraph company. In so far as this question affects this appeal the case cited is controlling, and what was there said need not be here repeated. The evidence presented on this issue on the two cases was very much the same. It was conflicting and was of such a character that reasonable minds might draw opposite inferences as to the ultimate facts to be determined therefrom. Under such a state of the evidence it is the exclusive province of the court or jury trying the issues of fact to weigh the evidence and draw the inferences therefrom and this court can not review the decision thus made. It is worthy of remark that the trial court in this case, reached a conclusion on the question of fact diametrically opposed to the conclusion reached by the trial court in the case cited, and that the evidence in the two cases was practically the same, and that this court under the established rules of law is unable to disturb either of such findings on appeal. Such a result would be impossible if the law were an exact science. If the standards by which duties and liabilities are measured were in all cases exact and invariable, the result of applying those standards, under like conditions and circumstances would be always the same; but the conditions and circumstances arising are so numerous and varied that it is frequently impossible for the courts to fix and enforce a definite and invariable standard by which to measure duties and responsibilities, and any attempt to do so would often work grave injustice and would be

worse than futile. A familiar illustration of the
want of an exact and invariable standard arises in
negligence cases. The standard of care applied in
such cases is, "such care as a person of ordinary
prudence would use under like circumstances."
This standard is not capable of application in such a
way as to reach uniform results. In applying this
standard it is possible for different courts and juries
to reach opposite conclusions in different cases where
the facts and circumstances are practically identical.
One jury might hold that certain conduct under a
given state of circumstances and conditions was
negligence, while another jury might hold that the
same conduct under the same circumstances and
conditions was consistent with ordinary care as
fixed by the standard to which we have referred.
In either case the finding of the jury on the question
of fact would have to be affirmed on appeal. This
apparent inconsistency does not arise from any de-
fect of the law but from the imperfection and falli-
bility of human reason and understanding. The
ideal "man of ordinary prudence" as conceived and
understood by different minds is not the same; and,
therefore, in determining what care such a person
would use under a given state of conditions and cir-
cumstances, different conceptions of the standard
may be applied and different results reached. So,
in a case such as this, there is no fixed and invariable
standard by which the courts can measure the de-
gree of interference of a subsequent appropriation
of real estate, with the public use to which it has
been devoted under a previous appropriation so as
to determine when such interference passes the
stage where it may be compensated in damages and
becomes so material and substantial as to preclude
the right of a subsequent appropriation. In such a
case this court can not reverse the decision of the

trial court on the evidence where there is a conflict, or where the facts established are of such a character that reasonable minds might properly draw opposite inferences therefrom.

The complaint of appellee after setting out the description of the right of way which it seeks to appropriate, and after describing the use to which it is to be devoted proceeds as follows:

2. "And subject to the condition, to which plaintiff hereby agrees, that in the event of the railroad company owning or operating said railroad shall at any time desire to change the location of the railroad track or tracks, structures or appurtenances, or construct new tracks, sidetracks, buildings, structures or appurtenances where the same do not now exist, which may be necessary in the operation of said railroad, by reason of which plaintiff's said telegraph line and the operation and maintenance thereof may interfere with the maintenance, operation and use of said railroad, plaintiff shall move and change its poles and parts of its line of telegraph to such other point or points on said railroad right of way as may be designated by said railroad company, upon reasonable notice and at the sole expense of the plaintiff; and subject to the further condition, to which plaintiff hereby agrees, that the railroad company owning or operating said line of railroad shall have the right to use said right of way occupied by said line of telegraph, but not so as to * * * interfere with said line of telegraph, and the right, when necessary upon reasonable notice to the plaintiff, to remove dirt, gravel, sand and stone from said right of way occupied by said telegraph line that may be needed in improving said railroad track or roadbed, or for other necessary purposes in the operation of said railroad; and the plaintiff hereby stipulates that it will hold the railroad company

owning or operating said railroad harmless from any damage to plaintiff's poles, wires, cross-arms and other appurtenances occasioned by fire or other method of keeping said railroad right of way free from grass, weeds, underbrush, and other combustible materials." Appellants filed an objection based upon this portion of the complaint and allege that appellants refused to accept the conditions and stipulations which appellee sought thereby to impose. The question thus presented is one of law and relates to the sufficiency of the complaint. It has been held that a complaint for appropriation of land may be so drawn as to limit the rights to be acquired thereunder and so as to leave in the landowner certain easements and rights not taken by appropriation. When a limited appropriation of this kind is made the damages are assessed on the basis of the land appropriated as considered in connection with the rights and easements not taken and compensation is awarded accordingly. *Indianapolis, etc., Traction Co.* v. *Wiles* (1910), 174 Ind. 236, 91 N. E. 160, 729; *St. Louis, etc., R. Co.* v. *Clark* (1894), 121 Mo. 169, 25 S. W. 192, 906, 26 L. R. A. 751, note. A distinction is to be observed however between an appropriation subject to certain rights of the landowner excepted from the appropriation sought and left unaffected thereby in the landowner, and an attempt to impose unaccepted promissory stipulations and proposed agreements by the condemning party in respect to undertakings to be performed subsequent to the time of appropriation. In the absence of an agreement, the party condemning must take the rights which he seeks to appropriate absolutely and unconditionally and he must make full compensation for 3. what he takes. His unaccepted promise to do something in the future in case certain

NOVEMBER TERM, 1915.    537

Louisville, etc., R. Co. *v.* Western Union Tel. Co.—184 Ind. 531.

emergencies arise can not affect the character or the extent of the rights acquired and they can not be considered as affecting the amount of damages to be awarded. *Indianapolis, etc., Traction Co.* v. *Wiles, supra; Evansville Terminal Railway* v. *Heerdink* (1910), 174 Ind. 537, 92 N. E. 548. The stipulations contained in that part of the complaint which has been quoted are promissory in their character relating to acts to be performed upon contingencies to arise after the act of appropriation has been completed by the payment of the award and the taking of the land appropriated. These allegations serve no purpose in the complaint unless it be to disclose and make apparent the theory of the complaint. It is the opinion of the majority of the court that these allegations do serve this purpose and that their effect is to show that appellee by its complaint did not seek to condemn the land described therein at all events and to pay the compensation awarded; but that it was its purpose to make the appropriation only upon the conditions stated, and in case it was permitted to impose the stipulations as to the future, and to have such stipulations considered in making the award. Such terms and conditions can not be imposed by the party seeking to condemn real estate; and, if the complaint must be construed as proceeding on the theory that the right to condemn was to be exercised on the terms stated or not at all, it is clearly bad. The writer is of the opinion that the complaint may be construed as an application for the unqualified and unconditional appropriation of the land therein described at all events, and that the allegations called in question by the third specification of objections were intended to mitigate the damages to be awarded. If the trial court placed this construction on the complaint it was justified in disregarding

Louisville, etc., R. Co. v. Western Union Tel. Co.—184 Ind. 531.

these allegations as mere surplusage and in holding that the complaint stated facts sufficient to entitle the plaintiff to an unconditional and unqualified appropriation of the land described in the complaint. Every reasonable presumption will be indulged in favor of the ruling of the trial court; and the writer is of the opinion that this court should presume that the trial court, in holding this complaint sufficient as against the objection, treated the allegations as mere surplusage and held that the complaint states facts sufficient to justify an unconditional appropriation of the land described.

In accordance with the views of the majority, the court holds that the complaint proceeds on the theory that appellee was entitled to appropriate the land described under the conditions and limitations therein stated as hereinbefore set out, and that the allegations questioned in objection No. 3 are so linked with the other allegations of the complaint as to evince a purpose on the part of appellee to assert its right to condemn on these terms or not at all. Viewed in this light the complaint does not state facts sufficient to entitle the plaintiff to the relief asked, or to any relief, and the court erred in overruling objection No. 3 and in appointing appraisers to assess damages.

The interlocutory order appointing appraisers is hereby reversed with instructions to sustain specification No. 3 of objections filed by defendants and to grant plaintiff leave to amend the complaint.

NOTE.—Reported in 111 N. E. 802. As to the nature of the right of eminent domain, see 102 Am. St. 811. See, also, under (1) 4 C. J. 843; 3 Cyc 345; (2) 15 Cyc 850; (3) 15 Cyc 637, 638, 639.